**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

Case: 1:26–mc–00153
Assigned To : AliKhan, Loren L.
Assign. Date : 10/27/2026
Description: Misc.

IN RE SUBPOENA TO ENTERTAINMENT SOFTWARE ASSOCIATION

Underlying Case No. 2:25-cv-01880-ODW-JDE

**TAKE-TWO INTERACTIVE SOFTWARE, INC.,**

Plaintiff,

v.

**PLAYERAUCTIONS, INC., ET AL.,**

Defendants.

Misc. No. ________________________

**PLAYERAUCTIONS INC.'S MOTION TO COMPEL ESA'S COMPLIANCE WITH DOCUMENT SUBPOENA**

## A. INTRODUCTION

PlayerAuctions, Inc. ("PlayerAuctions") brings this motion as a result of the Entertainment Software Association's ("ESA") failure to abide by its basic discovery obligations pursuant to PlayerAuctions's narrowly-tailored and duly issued June 9, 2026 subpoena. Rather than engage in a good faith effort to search for and produce the documents requested in the subpoena, ESA has engaged in a months-long effort to obstruct, stonewall, and gaslight PlayerAuctions, and has refused to produce any relevant documents in response to the subpoena. ESA has asserted baseless and unsupported objections, has attempted to unilaterally narrow the scope of the subpoena, and has outright refused to search for, let alone produce, relevant documents and communications between ESA and underlying action Plaintiff Take-Two Interactive Software, Inc. ("Take-Two"). Months of PlayerAuctions's good faith meet and confer efforts have not been fruitful. Accordingly, ESA must be compelled to provide the documents requested by the subpoena.



RECEIVED
OCT 27 2026
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

## B. FACTUAL AND PROCEDURAL BACKGROUND

### 1. The Underlying Action And Discovery Responses Implicating ESA's Involvement In The Issues Raised And Relevance To The Underlying Action

The underlying action arises from a March 2025 copyright infringement lawsuit brought by Plaintiff Take-Two against Defendant PlayerAuctions and its related affiliates, entitled *Take-Two Interactive Software, Inc. v. PlayerAuctions, Inc.*, No. 2:25-cv-01880 (C.D. Cal.). Declaration of Martin F. Hirshland ("Hirshland Decl.") ¶ 2. Take-Two alleges that PlayerAuctions "knowingly and willfully commits, contributes to, induces, and profits from copyright infringement" on its website[1] through the sale of Grand Theft Auto Online ("GTA") player accounts and related digital assets such as in-game accessories and in-game currency. *Id.* ¶ 3, Dkt. 30. In its answer, PlayerAuctions denied Take-Two's allegations and filed a counterclaim for Misrepresentation under the Digital Millenium Copyright Act in Violation of 17 U.S.C. § 512. *Id.* ¶ 4, Dkt. 33.

ESA's relevance to this dispute was revealed during the course of discovery through both independent investigations conducted by PlayerAuctions and Take-Two's own verified interrogatory responses.

PlayerAuctions independently found 2018 and 2019 "Notorious Markets Reports" authored by ESA. Hirshland Decl. ¶ 5, Ex. A. These reports were submitted to the U.S. Trade Representative on behalf of the ESA regarding "the out-of-cycle review of notorious markets…that facilitate mass infringement or counterfeiting of industry products and services and that remain either sheltered from, or impervious to, the deterrent effects of enforcement actions." *Id.*, at p.2. These reports name PlayerAuctions as an "unauthorized online marketplace," describing

[1] https://www.playerauctions.com/

it as a site providing "unauthorized digital items including in-game currency, items, skins, accounts, power-leveling, and keys." *Id.*, at p. 5.

Further, Take-Two's verified responses to Interrogatory No. 1, which were ordered compelled by the Court in connection with a Motion to Compel brought by PlayerAuctions, state that Take-Two became aware of PlayerAuctions as a result of similar "Notorious Markets Reports" written in 2020, 2021, 2022, and 2023 by ESA. Hirshland Decl. ¶ 6, Exs. B & C. A privilege log recently provided by Take-Two indicates what PlayerAuctions has known all along, which is that Take-Two and ESA were communicating concerning "potential litigation" against PlayerAuctions as early as September 6, 2018. *Id.* ¶ 7.

In addition to the 2018 – 2023 "Notorious Markets Reports" and the extensive correspondence between ESA and Take-Two from 2018 onwards concerning "potential litigation" against PlayerAuctions, ESA has been continuously sending PlayerAuctions DMCA Takedown Notifications throughout the pendency of this action. A recent notice was sent by ESA to PlayerAuctions through ESA's partner "MarkScan" on September 20, 2026. Hirshland Decl. ¶ 8, Ex. D. The notice asserts the same baseless claims that Take-Two has brought in the lawsuit against PlayerAuctions, that listings on the PlayerAuctions website constitute copyright infringement. Oddly, while the September 20, 2026 notice indicates that "Rockstar Games" is the copyright owner, Take-Two has asserted in its lawsuit against PlayerAuctions that Take-Two, and not Rockstar, is the copyright owner. *Id.*

2. PlayerAuctions's Document Subpoena To ESA, ESA's Response, And PlayerAuctions's Extensive But Ultimately Unsuccessful Meet And Confer Efforts

Based on the information disclosed in Take-Two's verified discovery responses and the results of PlayerAuctions's own independent fact investigation, PlayerAuctions served the subpoena at issue in this Motion on ESA on June 11, 2026 (the "Subpoena"). Hirshland Decl. ¶ 9, Ex. E. The Subpoena seeks documents in the possession, custody, and/or control of ESA concerning: 1) ESA's knowledge of PlayerAuctions and the PlayerAuctions website; 2) ESA's authority to act on behalf of Take-Two; 3) ESA's communications concerning the GTA game published by Plaintiff and the GTA game's terms of service; and 4) other online marketplaces similar to the PlayerAuctions website. *Id.*

After ESA was served with the Subpoena, PlayerAuctions's counsel and ESA's counsel engaged in the following meet and confer efforts:

- Emails exchanged between June 18 and June 22, wherein ESA requested an extension of the subpoena's June 26 response deadline and PlayerAuctions in good faith granted ESA an extension until July 10;

- A June 23 telephonic meet and confer, which lasted nearly an hour, wherein PlayerAuctions (at the request of ESA) provided context and background regarding the relevance of documents requested by the Subpoena, including the fact that Plaintiff specifically referenced ESA communications in Plaintiff's verified discovery responses as evidence of Plaintiff's knowledge of the PlayerAuctions website; and

- An email from PlayerAuctions to ESA following the June 23 telephonic meet and confer which attached ESA's communications regarding PlayerAuctions and the PlayerAuctions website produced by Plaintiff and included additional factual context supporting the relevance and proportionality of the documents requested by the Subpoena.

*Id.* at ¶ 10.

Despite these extensive efforts, ESA's response to the Subpoena, served on July 10, 2026 after a two-week extension granted by PlayerAuctions, was replete with boilerplate and unsubstantiated objections, such as objections based on relevance, unsupported claims of burden,

and baseless assertions of privilege. *Id.* ¶ 11, Ex. F. ESA's responses to the nineteen (19) narrowly-tailored and specific document requests in the Subpoena fell into three categories: 1) ESA's refusal to search for and produce any documents whatsoever (Request Nos. 7, 8, 9, 10, 11 and 15); 2) ESA's unilateral narrowing of the document requests to a time period of "January 1, 2020" to the present and/or ESA's refusal to search for or produce documents "shared between ESA and Take-Two" (Request Nos. 1, 2, 5, 6, 12, 13, 14, 16, 17, 18, and 19); and 3) ESA's willingness to search for and produce documents (Request Nos. 3 and 4). *Id.* ESA did not produce any documents at the time it served its July 10, 2026 responses to the Subpoena. *Id.*

After ESA served its responses and unsubstantiated objections to the Subpoena on July 10 but did not produce a single document, PlayerAuctions sent an email to ESA on July 13 asking for a further telephonic meet and confer to discuss the Subpoena, and ESA responded that it would "make its first production in the coming weeks." *Id.* ¶ 12. The following meet and confer efforts ensued:

- PlayerAuctions and ESA met and conferred telephonically at length on July 14 concerning the Subpoena and the fact that ESA had not provided any evidence or information to substantiate its objections. ESA agreed to discuss internally and get back to PlayerAuctions by July 17 regarding the timeframe of documents being searched for and whether documents would be produced involving Take-Two;

- After ESA did not provide PlayerAuctions with an update by July 17 as promised, PlayerAuctions sent ESA an email on July 21 summarizing the telephonic meet and confer and asked for ESA to make a production of documents by July 28; and

- ESA sent a letter on July 24, 2026, which followed PlayerAuctions's July 21 email, and ESA did not make a production by July 28 as requested. Nor has ESA ever provided any evidence or facts to support its objections during the meet and confer process.

*Id.* ¶ 13.

On Saturday, August 22, 2026, more than two months after being served with the Subpoena, ESA finally produced a tiny handful of documents. On September 2, 2026, PlayerAuctions sent ESA a meet and confer letter concerning ESA's failure to produce all documents requested by the Subpoena. *Id.* ¶ 14, Ex. G.

As referenced in the September 2, 2026 letter, the document production consisted of spreadsheets, a few duplicative communications with a third party called "Markscan", and slideshows of "presentations" for a period of "November 1 – 30", "March 1 – 31", "Dec 1 – 31", and Feb 1 – 28", respectively, but no year is provided. *Id.* ¶ 15.

ESA failed to produce at least the following documents responsive to the Subpoena: (1) contracts or agreements with Take-Two or Rockstar (Request No. 3); (2) documents or communications concerning the differences between GTA V Story Mode and GTA V Online (Request Nos. 12 and 13); and (3) documents or data concerning the Rockstar TOS (Request No. 14). *Id.* ¶ 16. Further, as stated before, ESA refused to search for or produce any documents responsive to Request Nos. 7, 8, 9, 10, 11 and 15, and refused to search for or produce any documents "shared between ESA and Take-Two" that are responsive to Request Nos. 1, 2, 5, 6, 12, 13, 14, 16, 17, 18, and 19. *Id.* ¶ 17.

On September 25, 2026, ESA produced "supplemental" responses to the Subpoena. *Id.* ¶ 18, Ex. H. The supplemental responses remained deficient, and PlayerAuctions sent a meet and confer email discussing those deficiencies on September 29, 2026. *Id.* ¶ 19, Ex. I. The issues with ESA's supplemental responses are the same as those with the original responses, and include, but are not limited to, the following:

- ESA is asserting baseless privilege objections without any evidence of privilege, or any evidence that ESA has a "common interest" with Take-Two dating back to 2013 – in fact, ESA's refusal to produce any agreements with

Take-Two and refusal to produce a privilege log undermines ESA's unsupported privilege claims;

- ESA is asserting burden objections without any evidence of burden;
- ESA is unilaterally limiting the time frame of the subpoena; and
- ESA is refusing to produce communications with Plaintiff Take-Two.

*Id.* ¶ 20.

The parties discussed the supplemental responses during a telephonic meet and confer on October 2, 2026. *Id.* ¶ 21. After many months, ESA did not substantiate its objections, refused to revise its responses to the Subpoena, and refused to search for or produce additional documents called for by the Subpoena. *Id.* ¶ 22. The instant Motion follows these extensive but unsuccessful meet and confer efforts.

## C. <u>ARGUMENT</u>

### 1. <u>Legal Standard</u>

Rule 45 governs third party subpoenas. *See* Fed. R. Civ. P. 45. A Rule 45 subpoena may command a third party to produce documents or electronically stored information. Fed. R. Civ. P. 45(c)(2)(A). If the third party objects to the subpoena, the party seeking discovery "may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i). When considering a Rule 45 motion to compel, a court "must first consider whether the discovery sought is relevant to a party's claim or defense in the underlying litigation, as defined by Rule 26(b)(1)." *Buzzfeed, Inc. v. U.S. Dep't of Justice*, 318 F. Supp. 3d 347, 356 (D.D.C. 2018). The party seeking discovery bears the initial burden of showing that the request is sufficiently relevant. *Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.*, 242 F.R.D. 1, 9 (D.D.C. 2007). If the requested discovery is relevant, the court then considers objections to the subpoena under Rule 45, including whether it poses an undue burden on the third

party. *BuzzFeed*, 318 F. Supp. at 356. The burden falls on the party resisting discovery to show that compliance would be unduly burdensome. *In re Micron Tech., Inc. Sec. Litig.*, 264 F.R.D. 7, 9 (D.D.C. 2010).

Courts in this circuit favor broad discovery where "a court with jurisdiction over a discovery dispute for an action pending in a different district generally has limited exposure to and understanding of the primary action." *Flanagan v. Wyndham Int'l*, 231 F.R.D. 98, 103 (D.D.C. 2005). Further, courts should be cautious when "determining relevance of evidence, and in case of doubt should err on the side of permissive discovery." *Id.*

ESA cannot meet its heavy burden to avoid complying with the Subpoena. *Colonial Bancgroup, Inc. v. Pricewaterhousecoopers Ltd. Liab. P'ship*, 110 F. Supp. 3d 37, 41 (D.D.C. 2015) ("The quashing of a subpoena is an extraordinary measure, and is usually inappropriate absent extraordinary circumstances… Consequently, the movant's burden is greater for a motion to quash than if she were seeking more limited protection.")

Further, the documents produced must be organized and labeled "to correspond to the categories in the demand" as required by FRCP 45(e)(1)(A).

2. <u>The Requested Documents Are Relevant And Proportional To The Needs of The Case</u>

Discovery is relevant "if there is any possibility that the information sought may be relevant to the claim or defense of any party." *In re Denture Cream Prods. Liab. Litig.*, 292 F.R.D. 120, 123 (D.D.C. 2013) (quoting *Hesco Bastion Ltd. v. Greenberg Traurig LLP*, No. 09-0357, 2009 U.S. Dist. LEXIS 124079, 2009 WL 5216932, at *4 (D.D.C. Dec. 23, 2009) (citation omitted)). In the discovery context, relevance is "liberally construed." *Id.*

"The term relevance at the discovery stage is broadly construed to include information which is not admissible at the trial if the discovery appears reasonably calculated to lead to the

discovery of admissible evidence." *Covertino v. United States Department of Justice*, 565 F. Supp. 2d 10, 12 (D.D.C. 2008) (citation omitted). ESA has the burden to show that the documents requested by the Subpoena are not relevant, which it cannot meet. *See Dellums v. Powell*, 642 F.2d 1351, 1364 (1980) ([T]he burden of persuasion is on [the subpoenaed party] to demonstrate that particular transcripts are not relevant and should not be produced. The standard to be applied by the District Court in ruling on…. relevancy objections should be the relevancy standard ordinarily applied to discovery, rather than the admissibility standard.")

Plaintiff Take-Two claims harm from PlayerAuctions's alleged conduct of allowing GTA V players to buy and sell in-game assets on the PlayerAuctions website. Take-Two alleges that PlayerAuctions has been engaged in this conduct since 2013. Take-Two is a longstanding member of ESA, and ESA purports to act on Take-Two's behalf with respect to its copyrights, including GTA V. Accordingly, ESA's knowledge of PlayerAuctions's conduct (and that of similar websites) since 2013 is unquestionably relevant to Plaintiff Take-Two's actual and constructive knowledge of infringement and PlayerAuctions's affirmative defenses of statute of limitations, waiver, acquiescence and estoppel, among others. *See Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 971 F.3d 1042, 1047 (9th Cir. 2020) ("[C]onstructive knowledge triggers the statute of limitations…"); *see also Pincay v. Andrews*, 238 F.3d 1106, 1110 (9th Cir. 2001) ("The plaintiff is deemed to have had constructive knowledge if it had enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the [claim]."); *Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1521 (9th Cir. 1983) (same).

ESA clearly has relevant documents and communications in its possession, custody, and/or control dating as far back as at least October 2018 (and likely sooner), given that ESA sent a letter to the Office of the U.S. Trade Representative dated October 1, 2018, discussing PlayerAuctions

and the PlayerAuctions website. Hirshland Decl. ¶ 5, Ex. A. Further, ESA sent a similar letter on September 30, 2019, with the same reference to PlayerAuctions and the PlayerAuctions website. *Id*. The fact that documents from ESA can assist PlayerAuctions with its affirmative defenses means that the documents are relevant. *See Canal Ins. Co. v. Baca*, No. 26-mc-46, 2026 LX 473391, at *10 (D.D.C. July 31, 2026) ("Because Baca seeks information directly related to her defense against Canal… the requested information falls within the scope of Rule 26's relevance standard.")

ESA is also, to this day, continuing to send DMCA Takedown notices to PlayerAuctions, and purporting to act on behalf of Take-Two when doing so. *Id*. ¶ 8, Ex. D.

3. <u>ESA Has Failed To Substantiate Or Support Its Boilerplate Objections To The Subpoena</u>

ESA repeats essentially verbatim the same three (3) objections to every document request in the Subpoena: (1) the documents are not relevant; (2) the request is unduly burdensome; (3) the requested documents are privileged. Hirshland Decl. ¶ 18, Ex. H. However, ESA did not substantiate a single objection at any time during the months long meet and confer process, and cannot do so now. *Id*. ¶ 22. Accordingly, ESA's objections must be overruled.

With respect to the objection that the records sought are not relevant to the case, this objection is untrue (as demonstrated above). "The term relevance at the discovery stage is broadly construed to include information which is not admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Covertino v. United States Department of Justice*, 565 F. Supp. 2d 10, 12 (D.D.C. 2008) (citation omitted). Here, applying that liberal standard, the Subpoena clearly seeks relevant documents.

ESA's objections based on burden are also unsubstantiated. The heavy burden of demonstrating that the requested discovery would be unduly burdensome falls on the party

resisting discovery. *Linder v. Calero-Portocarrero*, 180 F.R.D. 168, 173, 176 (D.D.C. 1998). This Court "only entertains an unduly burdensome objection when the responding party demonstrates how discovery of the document is overly broad, burdensome, or oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden." *Convertino v. United States DOJ*, 565 F. Supp. 2d 10, 14 (D.D.C. 2008) (cleaned up). ESA has not, and cannot, muster any such evidence. *See Canal Ins. Co. v. Baca*, No. 26-mc-46, 2026 LX 473391, at *10 (D.D.C. July 31, 2026) ("ICE fails to introduce an affidavit or otherwise show with any specificity how or why producing the requested documents would be unduly burdensome.")

Further, as PlayerAuctions explained repeatedly to ESA during the months-long meet and confer efforts, the scope of discovery is determined by Plaintiff's Take-Two's FAC. *Ventura v. Donna (In re Donna)*, Nos. 16-00091, 16-10026, 2016 Bankr. LEXIS 4486, at *6 (Bankr. D.D.C. Dec. 27, 2016) ("The discovery sought is demonstrably relevant to the plaintiffs' claims.") The FAC twice references the fact that GTA V was released in 2013. FAC ¶ 1 ("Since its launch in 2013, GTA V has sold more than 205 million copies, and its multiplayer online mode, *Grand Theft Auto Online*, is played daily by tens of thousands of fans worldwide."); ¶ 18 ("First released in 2013, GTA V, including its multiplayer online component *Grand Theft Auto Online* ('GTA Online'), is one of most successful, influential, and critically acclaimed games of all time."). Plaintiff Take-Two cannot cite to a date multiple times in its FAC only for ESA to then take the position that documents from such a date onwards should not be produced.

ESA has also failed to substantiate or explain its objections based on "attorney-client privilege, common interest privilege, and/or work product doctrine" which are asserted in every response to the Subpoena.

Rule 45 requires the following:

> "A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
>
> (i) expressly make the claim; and
>
> (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."

Fed. R. Civ. P. 45(e)(2)(A).

Here, ESA has not substantiated its privilege objections with a privilege log or other information that would allow PlayerAuctions to assess the claim. *See Dir. of Office of Thrift Supervision v. Ernst & Young*, 795 F. Supp. 7, 13 (D.C. District Court1992) ("If Ernst & Young withholds any document responsive to the Subpoena by reason of a claim of privilege, Ernst & Young shall furnish an affidavit at the time the documents are produced identifying each document for which the privilege is claimed. With respect to each such document, Ernst & Young shall state the basis upon which the privilege is claimed, identify the specifications of the Subpoena to which the withheld document is responsive, and state the subject matter, number of pages, author, date created, and the identities of all persons to whom the original or any copies of the document were shown or provided.").

ESA also cites a "common interest doctrine" without support. A "common interest" can only arise between ESA and a third party in connection with "some form of agreement," and ESA has not produced any agreements with Take-Two or provided any factual support for the common interest doctrine or any other privilege. *See Pac. Pictures Corp. v. United States Dist. Court*, 679 F.3d 1121, 1129 (9th Cir. 2012) ("[A] shared desire to see the same outcome in a legal matter is insufficient to bring a communication between two parties within [the common interest] exception. Instead, the parties must make the communication in pursuit of a joint strategy in accordance with some form of agreement—whether written or unwritten.").

Accordingly, ESA's objections to the Subpoena are unsupported and must be overruled.

4. Request For Finding Of Contempt Pursuant to Rule 45(g)

PlayerAuctions requests a finding of contempt against ESA due to ESA's failure to respond to the Subpoena and failure to substantiate or support its boilerplate objections.

## D. CONCLUSION

For the foregoing reasons, PlayerAuctions requests that the Court: 1) overrule ESA's objections to the Subpoena; 2) order ESA to fully comply with the Subpoena; and 3) impose contempt sanctions against ESA pursuant to Fed. R. Civ. P. 45(g).

DATED: October 27, 2026

Respectfully submitted,

DYKEMA GOSSETT LLP

By: ________________________________

ERIC FINGERHUT (DC Bar No. 433649)
JOANNE ZIMOLZAK (DC Bar No. 452035)

**DYKEMA GOSSETT PLC**
1301 K Street, NW, Suite 1300 West
Washington, DC 20005
Tel: (202) 906-8600

***Attorneys for PlayerAuctions, Inc. et al.***